## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RADOSTINA VLADIMIROVA,
an individual,

                                       Case No.:

     Plaintiff,

v.

VERIZON WIRELESS SERVICES, LLC, a foreign
for-profit company,
EQUIFAX INFORMATION SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign for-profit company,
TRANS UNION LLC, a foreign limited
liability company,
TRANSWORLD SYSTEMS, INC.
a foreign for-profit company, and
CREDIT CONTROL, LLC,
a foreign limited liability company.

     Defendants.

_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, RADOSTINA VLADIMIROVA, by and through the undersigned

counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates

Jon P. Dubbeld, Esq. as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, RADOSTINA VLADIMIROVA (hereinafter,

"Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants,

EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"),

EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"),

1

TRANS UNION LLC (hereinafter, "Trans Union"), VERIZON WIRELESS SERVICES, LLC ("VW"), TRANSWORLD SYSTEMS, INC. (hereinafter, "TSI") and CREDIT CONTROL, LLC (hereinafter, "CC") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1.      This is an action brought by an individual consumer for damages for Defendants' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein VW improperly credit-reported and subsequently verified objectively-inaccurate information related to a cell phone account (hereinafter, the "Account") on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Equifax, Experian, and Trans Union. More specifically, despite Plaintiff timely returning all of her VW equipment, VW subsequently reported the Account with a past due balance allegedly for not timely returning her VW equipment. This inaccurate and misleading reporting resulted in an adverse, and/or derogatory tradeline Account on Plaintiff's Equifax, Experian, and Trans Union reports, damaging Plaintiff's credit scores and credit reputation.

2.      Additionally, this is an action for damages for Equifax, Experian, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report the Account with negative information after Plaintiff repeatedly disputed to Equifax, Experian, and Trans Union wherein Plaintiff advised Equifax, Experian, and Trans Union that such reporting was false and inaccurate.

3.     Additionally, this is an action for damages brought by an individual consumer for VW's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and TSI and CC's violation of the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA") wherein VW, TSI, and CC attempted to collect a consumer debt directly from Plaintiff that Plaintiff did not owe.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

5.     Defendants are subject to the jurisdiction of this Court, as Defendants each regularly transact business in this District.

6.     Venue is proper in this District as Defendants each regularly conduct business in this District, and the acts and transactions described herein occur in this District.

7.     At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

8.     At all material times herein, VW is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business located at One Verizon Way, Basking Ridge, NJ 07920 that regularly does business within Pinellas County, Florida, where the causes of action herein accrued.

9.   At all material times herein, CC is a foreign limited liability company that regularly does business within Pinellas County, Florida, where the causes of action

3

herein accrued.

10.  At all material times herein, TSI is a foreign limited liability company that regularly does business within Pinellas County, Florida, where the causes of action herein accrued.

11.  At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

12.  At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

13.  At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

14.  Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

15.  Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

4

*Id.* at § e(b) (emphasis added).

16.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

17.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

18.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

19.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the

5

investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

20. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

21. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA AND FDCPA STATUTORY STRUCTURE

21. The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

22. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

23. Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

24. For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt. See 15 U.S.C. §§ 1692(d)-(e).

25. Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate. See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

26. At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

27. At all material times herein, VW, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Pinellas County, Florida.

28. At all material times herein, VW is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United

7

States Code, Section 1681s-2.

29.    At all material times herein, VW reports information concerning an account to Equifax, Experian, and Trans Union including but not limited to, a tradeline account related to an alleged VW Account, referenced by account number beginning 4267491830**** (hereinafter, the "Account").

30.    At all material times herein, VW is a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

31.    At all material times herein, TSI and CC's conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

32.    At all material times herein, Plaintiff was current on her VW bills, including timely returning all VW equipment, and had a $0 balance on the Account.

33.    Notwithstanding the foregoing, VW failed to accurately report the Account with a zero-dollar balance due to Equifax, Experian, and Trans Union and instead reported the Account with an alleged balance due in the amount of $213, representing a fee for allegedly not timely returning equipment which was incorrect.

34.    At all material times herein, VW furnishes incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union — continuing after Plaintiff's repeated disputes—despite that Plaintiff was current with all payments on her Account, timely returned all VW equipment, and maintained a $0 balance on the account.

8

35. VW furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

36. At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

37. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

38. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

39. At some point prior to September 2024, Plaintiff obtained an account with VW. As part of the services for the Account, VW provided Plaintiff with certain equipment to use.

40. On or around September 27, 2024, Plaintiff terminated her Account with

9

VW.

41.    On or around November 4, 2024, VW sent Plaintiff an e-mail stating that if she returned the equipment that was provided within 30 days (i.e. on or before December 4, 2024), she would not be charged any unreturned equipment fee in accordance with her contract with VW.

42.    Plaintiff complied with VW's directives and returned her equipment to VW via FedEx within 30 days of the November 4, 2024 e-mail.

43.    Specifically, Plaintiff's equipment was returned on or around November 19, 2024 and received by VW on November 25, 2024.

44.    Subsequently, despite Plaintiff's timely return of her equipment, VW reported a $213 charge for unreturned equipment on Plaintiff's credit reports with Equifax, Experian and Trans Union.

45.    At all times, Plaintiff's Account should have been reported with a $0 balance.    Accordingly, the $213 charge on her credit reports was inaccurate, misleading, and false.

46.    In fact, Plaintiff's December 2024 VW statement expressly showed that Plaintiff had a $0 balance on the Account.  Nevertheless, VW continued to report the $213 charge on her credit reports.

47.    After VW reported the $213 charge on Plaintiff's credit reports, In 2025, Plaintiff submitted multiple disputes to Equifax, Experian and Trans Union to have that incorrect and misleading tradeline removed (the "2025 Disputes").

48.    In her 2025 Disputes, Plaintiff provided sufficient information for each

credit reporting agency to confirm her identity, investigate the incorrect and misleading charge on the Account, and remove the same.

49.     Equifax received Plaintiff's 2025 Disputes.

50.     Equifax communicated Plaintiff's 2025 Disputes to VW, including all enclosed documents.

51.     VW received Plaintiff's 2025 Disputes from Equifax.

52.     In response to Plaintiff's 2025 Disputes, Equifax purportedly verified its reporting of the Account.

53.     Equifax continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the actual balance was and should have been reported as $0.

54.     Experian received Plaintiff's 2025 Disputes.

55.     Experian communicated Plaintiff's 2025 Disputes to VW, including all enclosed documents.

56.     VW received Plaintiff's 2025 Disputes from Experian.

57.     In response to Plaintiff's 2025 Disputes, Experian purportedly verified its reporting of the Account.

58.     Experian continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the actual balance was and should have been reported as $0.

59.     Trans Union received Plaintiff's 2025 Disputes.

60.     Trans Union communicated Plaintiff's 2025 Disputes to VW, including

11

all enclosed documents.

61.    VW received Plaintiff's 2025 Disputes from Trans Union.

62.    In response to Plaintiff's 2025 Disputes, Trans Union purportedly verified its reporting of the Account.

63.    Trans Union continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the actual balance was and should have been reported as $0.

64.    On or about March 2026, Plaintiff submitted with the assistance of her attorneys another dispute to Equifax, Experian and Trans Union to have the incorrect and misleading $213 VW tradeline removed (the "March 2026 Dispute").  Plaintiff provided with her March 2026 Dispute sufficient information for each credit reporting agency to confirm her identity, investigate the incorrect and misleading charge on the Account, and remove same.

65.    In addition, Plaintiff included with her March 2026 Dispute VW's November 4, 2024 e-mail, stating that if she returned the equipment within 30 days there would be no charge to her, the FedEx tracking documents showing that the equipment was in fact returned within 30 days, and the December 2025 VW account statement showing that Plaintiff had a $0 balance on the Account.

66.    Equifax received Plaintiff's March 2026 Dispute.

67.    Equifax communicated Plaintiff's March 2026 Dispute to VW, including all enclosed documents.

68.    VW received Plaintiff's March 2026 Dispute from Equifax.

12

69.     In response to Plaintiff's March 2026 Dispute, Equifax purportedly verified its reporting of the Account.

70.     Equifax continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the actual balance was and should have been reported as $0.

71.     Experian received Plaintiff's March 2026 Dispute.

72.     Experian communicated Plaintiff's March 2026 Dispute to VW, including all enclosed documents.

73.     VW received Plaintiff's March 2026 Dispute from Experian.

74.     In response to Plaintiff's March 2026 Dispute, Experian purportedly verified its reporting of the Account.

75.     Experian continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the actual balance was and should have been reported as $0.

76.     Trans Union received Plaintiff's March 2026 Dispute.

77.     Trans Union communicated Plaintiff's March 2026 Dispute to VW, including all enclosed documents.

78.     VW received Plaintiff's March 2026 Dispute from Trans Union.

79.     In response to Plaintiff's March 2026 Dispute, Trans Union purportedly verified its reporting of the Account.

80.     Trans Union continued to incorrectly and misleadingly report the Account with the alleged unreturned equipment fee due and a $213 balance, when the

actual balance was and should have been reported as $0.

81.    Despite all of Plaintiff's disputes, Plaintiff not owing a balance on the Account after returning her equipment to VW in November 2024, and VW conceding in their December 2025 statement that Plaintiff's balance was $0, VW failed to request that Equifax, Experian, and Trans Union delete the Account showing a $213 balance from Plaintiff's credit reports and credit files.

82.    VW, Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's Pre-March 2026 Disputes, because if VW, Equifax, Experian, and Trans Union had conducted reasonable investigations and re-investigations, VW, Equifax, Experian, and Trans Union would have known that Plaintiff had a $0 balance on the Account and that the equipment had been timely returned.

83.    VW, Equifax, Experian, and Trans Union's failed to conduct reasonable investigations and re-investigations into Plaintiff's March 2026 Dispute, because if VW, Equifax, Experian, and Trans Union had conducted reasonable investigations and re-investigations, VW, Equifax, Experian, and Trans Union would have known that Plaintiff had a $0 balance on the Account and that the equipment had been timely returned.

84.    VW, Equifax, Experian, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiff's Pre-March 2026 Disputes was unreasonable given the information provided in Plaintiff's Pre-March 2026 Disputes.

85.    VW, Equifax, Experian, and Trans Union's failure to conduct reasonable

investigations and re-investigations into Plaintiff's March 2026 Dispute was unreasonable given the information provided in Plaintiff's March 2026 Dispute.

86. On August 11, 2025, CC attempted to collect the alleged debt from Plaintiff via an e-mail.

87. On March 6, 2026, TSI attempted to collect the alleged debt from Plaintiff via e-mail.

## DAMAGES

88. In July 2025, Plaintiff was denied Home Equity Line of Credit from Connexus Credit Union in the amount of $120,000.00.

89. As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

90. Following Plaintiff's 2025 Disputes and her March 2026 Dispute, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports containing the inaccurate $213 balance on the Account.

91. Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

92. Plaintiff retained Swift Law PLLC and F&H Law Group, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

15

93.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

94.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with inaccurate and misleading information resulting in the Account being reported as a derogatory, negative, or adverse account.

95.     Additionally, as a result of Defendants' actions, Plaintiff was denied credit and/or has been required to pay higher interest rates as a result of the erroneous and misleading reporting of the Account.

96.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite being released from the mortgage and all financial responsibility regarding the Account, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to VW Only)**

16

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

97.    VW is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same (which included their own documents), and failing to request that Equifax, Experian, and Trans Union delete the reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

98.    As described above, Plaintiff timely returned her equipment to VW and should have had a zero balance on the Account at all times material.

99.    Despite Plaintiff not owing a balance on the Account, VW failed to request that the national credit bureaus delete their reporting of the Account, and instead reported the Account with a past due balance of $213.

100.    During or about 2025, VW received notice of Plaintiff's 2025 Disputes from Equifax, Experian, and Trans Union.

101.    Following Plaintiff's 2025 Disputes, VW confirmed and/or verified its false reporting to Equifax, Experian, and Trans Union showing that the Account had a balance past due of $213 for unreturned equipment, and VW failed to request that Equifax, Experian, and Trans Union delete their reporting of the Account.

102.    During or about March 2026, VW received notice of Plaintiff's March

2026 Dispute from Equifax, Experian, and Trans Union, and VW received copies of all documents enclosed with Plaintiff's March 2026 Dispute.

103.    Following Plaintiff's March 2026 Dispute—which enclosed a copy of the November 4, 2024 e-mail from VW confirming that Plaintiff had 30 days to return he equipment, a Fedex document showing that the equipment had in fact been returned within 30 days, and the December 2025 VW statement showing that Plaintiff's balance was $0 – VW *again* confirmed and/or verified its reporting to Equifax, Experian, and Trans Union, *continued* to report that the Account had a balance past due of $213 for unreturned equipment, and VW *still* failed to request that Equifax, Experian, and Trans Union delete their reporting of the Account.

104.    Plaintiff timely returned all equipment to VW and had no balance on her Account.

105.    As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's credit reports and in Plaintiff's credit files with a $213 balance for unreturned equipment.

106.    VW's refusal to request that Equifax, Experian, and TransUnion correct the tradeline associated with the Account was done intentionally, willfully, and/or knowingly as VW clearly possessed knowledge that Plaintiff had a $0 balance on the Account.

107.    VW's investigations/re-investigations were not conducted in good faith.

108.    VW's investigations/re-investigations were not conducted reasonably.

109.    VW's investigations/re-investigations were not conducted using all

18

information reasonably available to VW.

110.    As a result of VW's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit and/or charged higher interest rates, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of VW's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

111.    VW's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

112.    VW's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax, Experian, and Trans Union Only)**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated

19

herein and further states as follows:

113.    Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

114.    Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

115.    Despite Plaintiff timely returning her equipment to VW and not owing a balance on the Account after December 2024—and despite Plaintiff's repeated disputes advising Equifax, Experian, and Trans Union of the same, *with proof*- Equifax, Experian, and Trans Union failed to delete their reporting of the Account.

116.    More specifically, despite Plaintiff not owing a balance on the Account as a result of her return of all VW equipment within 30 days of November 4, 2024, as directed—and despite Plaintiff notifying Equifax, Experian, and Trans Union of the same through Plaintiff's disputes including copies of correspondence, tracking documents confirming the return of her equipment, and a December 2025 statement from VW confirming her $0 balance— Equifax, Experian, and Trans Union continued to report the Account with a past due balance of $213 for the alleged unreturned equipment.

117.    Such reporting of the Account is false and evidences Equifax, Experian, and Trans Union's failure to establish or follow reasonable procedures to assure the

maximum possible accuracy of Plaintiff's credit reports and credit file.

118. Plaintiff returned her equipment within 30 days of the November 4, 2024 e-mail directing same, had a $0 balance on the closed account, and provided evidence of same to Equifax, Experian and Trans Union along with multiple disputes.

119. As such, it is inaccurate and/or materially misleading to report the Account on Plaintiff's credit reports and in Plaintiff's credit files at any time after December 2024 that she had a balance on the Account.

120. Between December 2024 and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

121. Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

122. As a result of Equifax, Experian, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, she was denied credit, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of VW's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit

21

using consumer reports that reported the Account with inaccurate and misleading information resulting in the Account being reported as a derogatory, negative, or adverse account.

123. Equifax, Experian, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

124. Equifax, Experian, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT THREE:
### FAIR CREDIT REPORTING ACT – VIOLATION OF 15 UNITED STATES CODE SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5) (as to Equifax, Experian, and Trans Union Only)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

125. Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information received in

22

Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

126. Specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

127. For example, after receiving Plaintiff's 2025 Disputes, Equifax, Experian, and Trans Union failed to request any documents from VW.

128. Instead, following Plaintiff's First Dispute, Equifax, Experian, and Trans Union parroted purported verifications from VW, and continued to report the Account on Plaintiff's credit reports and in Plaintiff's credit files.

129. After receiving Plaintiff's March 2026 Dispute—which enclosed VW's November 4, 2024 e-mail, stating that if she returned the equipment within 30 days there would be no charge to her, the FedEx tracking documents showing that the equipment was in fact returned within 30 days, and the December 2025 VW account statement showing that Plaintiff had a $0 balance on the Account— Equifax, Experian, and Trans Union *again* failed to request any documents from VW and wholly ignored the documents Plaintiff enclosed with her March 2026 Dispute.

130. Instead, following Plaintiff's March 2026 Dispute, Equifax, Experian, and Trans Union *again* parroted purported verifications from VW, and *still* continued to report the Account with a $213 balance on Plaintiff's credit reports and in Plaintiff's credit files.

23

131.    Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's several disputes, Equifax, Experian, and Trans Union solely relied on VW's blanket and parroted assertions that Defendants were entitled to report the Account with a balance past due of $213 for alleged unreturned equipment, which was not the case.

132.    Equifax, Experian, and Trans Union did not request any documents from VW corroborating information furnished and/or verified by VW regarding Plaintiff and the Account in response to any of Plaintiff's disputes.

133.    Equifax, Experian, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

134.    Despite receiving Plaintiff's Pre-March 2026 Disputes and her March 2026 Dispute, each of which explained how and why the $213 charge should not have been reported on her Account, which allowed Equifax, Experian, and Trans Union to determine that the Account must be corrected, Equifax, Experian, and Trans Union *continued* to report the Account incorrectly.

135.    As such, Equifax, Experian, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

136.    Such reporting is false and evidences Equifax, Experian, and Trans Union's respective failures to conduct reasonable investigation/re-investigations of

24

Plaintiff's repeated disputes.

137.  Equifax, Experian, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

138.  Equifax, Experian, and Trans Union's investigation/reinvestigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by VW.

139.  Equifax, Experian, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

140.  Equifax, Experian, and Trans Union's investigation/reinvestigation procedures are unreasonable.

141.  Equifax, Experian, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

142.  Equifax, Experian, and Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax, Experian, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

143.  As a result of Equifax, Experian, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, she was denied credit, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of VW's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit

using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

144.    Equifax, Experian, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

145.    Equifax, Experian, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)
### (As to VW Only)

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

146.    VW is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite VW possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that VW knows does not exist.

26

147.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because she returned the VW equipment and VW acknowledged the same.

148.    As such, VW possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet VW continued to communicate indirectly with Plaintiff in an attempt to collect the Alleged Debt through CC and TSI.

149.    VW's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing on the Account, VW could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

150.    As a result of VW's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure VW's ongoing and invasive debt collection communications.

151.    VW's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

152.    As a direct and proximate result of VW's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT FIVE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and**
**e(10)**
**(As to CC and TSI Only)**

Plaintiff re-alleges paragraphs one (1) through ninety-six (96) as if fully restated herein and further states as follows:

153.    CC and TSI are subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely representing the amount, legal status, or character of the Alleged Debt.

154.    Despite knowing that Plaintiff did not owe the Alleged Debt, CC and TSI sent at least one (1) email to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

155.    As a direct and proximate result of Genesis's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgment declaring that VW violated the FCCPA;

b.      Judgment enjoining VW from engaging in further conduct in violation of the FCCPA;

c.      Judgment against VW for maximum statutory damages under the

28

FCCPA;

d. Judgment against CC and TSI for maximum statutory damages for violations of the FDCPA;

e. Judgment against VW, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

f. Actual damages in an amount to be determined at trial;

g. Compensatory damages in an amount to be determined at trial;

h. Punitive damages in an amount to be determined at trial;

i. An award of attorney's fees and costs; and

j. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data— pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*

Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com

29

jmurphy@swift-law.com
*Lead co-counsel for Plaintiff*

-and-

**F&H LAW GROUP, P.A.**


/s/ Ryan C. Hasanbasic
Ryan C. Hasanbasic, Esq., FBN 44119
1807 Short Branch Drive
Suite 101
Trinity, FL 34655
Phone:  (727) 500-1010
Fax:  (727) 943-3203
ryan@fhlawpa.com
*Co-counsel for Plaintiff*

30